UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTELLECT WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 1215 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| T-MOBILE USA, INC. and UNITED STATES CELLULAR CORP., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Intellect Wireless, Inc. ("Intellect") brought this patent infringement action against defendants United States Cellular Corp. ("U.S. Cellular") and T-Mobile USA, Inc. ("T-Mobile") (collectively, "defendants")[1], alleging infringement of certain patents relating to the sending, transmission, and receipt of messages between wireless devices such as cellular telephones. This matter is presently before the court on defendants' motion for summary judgment.

### I. BACKGROUND

Defendants are each in the business of offering wireless communications services. (Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment ("Defs.' Stmt.") ¶ 2.) Intellect is a Texas-based corporation that specializes in commercializing inventions relating to wireless image messaging. (*Id.* ¶ 1.) Among those inventions are U.S. Patent numbers 7,257,210 (the "'210 patent"), 7,266,186 (the "'186 patent"), and 7,305,076 (the "'076 patent") (collectively, the

---

[1] Intellect also brought this suit against Virgin Mobile USA, Inc. and Helio, Inc., each of which has since been dismissed from this case with Intellect's agreement. (Doc. 112.)

"patents-in-suit"), all of which are at issue in the instant motion.[2] (*Id.* ¶ 6.) Each of the patents-in-suit concerns the method of sending and transmitting picture and video messages between wireless devices. Each of the patents-in-suit includes method claims that refer to, *inter alia*, a "message originator" and a "message center." Some of the claims also refer to a "message recipient."

For example, claim 1 of the '210 patent, cited by defendants as illustrative of all of the claims at issue, states:

> A method of communicating information from a <u>message originator</u> to a <u>message recipient</u> having a wireless portable communication device, comprising the steps of:
>
> initiating a message from a <u>message originator</u> to a <u>message recipient</u> under the control of the <u>message originator</u> as to when the message is sent to a <u>message center</u>, the <u>message center</u> being coupled to a communications network;
>
> receiving at the <u>message center</u> both <u>message originator</u> information provided automatically by the communications network as the caller ID identifying the telephone number of the <u>message originator</u>, and a non-facsimile picture obtained from the <u>message originator</u> prior to transmitting the caller ID to a wireless portable communication device; and,
>
> causing the communications network to wirelessly transmit the caller ID and the picture from the <u>message center</u> to the wireless portable communication device.

(*Id.* ¶ 15 (emphasis added).) The other claims at issue also use these terms. (*See id.* ¶ 17 (quoting claim 18 of the '186 patent, which uses the terms "message originator," "message recipient," and "message center"); *id.* ¶¶ 19, 20, 21, 22 (quoting claims 1, 6, 12, and 19, respectively, of the '076 patent, each of which uses all three identified terms).)

---

[2] Since the defendants filed the instant motion, Intellect filed an Amended Complaint in which it restates its allegations regarding defendants' infringement of the patents-in-suit and also asserts that defendants infringed U.S. Patent number 7,349,532 (the "'532 patent"). The '532 patent is not at issue in the instant motion, and the court does not consider it when using the term "patents-in-suit" for the purposes of resolving the instant motion.

## II. LEGAL STANDARD

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Perfect Web Techs. Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1327 (Fed. Cir. 2009). Summary judgment is proper only when, "drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the nonmovant cannot prevail." *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319 (Fed. Cir. 2010).

## III. ANALYSIS

Defendants argue that they cannot be liable for direct infringement because the subject patents, which require a "message originator," a "message center," and a "message recipient," cannot be infringed by a single actor. Intellect insists that defendants' motion is premature and, in any case, that the subject claims are susceptible to infringement by a single actor. The court examines each of Intellect's arguments in turn.

**A.     Whether Summary Judgment is Premature**

1.     <u>Discovery</u>

Intellect argues that summary judgment is premature first because it needs more discovery, specifically "depositions concerning issues such as the manner in which messages are initiated so as to be processed by Defendants' message centers." (Doc. 137 at 5.) However, Intellect plainly has failed to comply with the required procedure to assert its need for additional discovery as a basis for opposing summary judgment. Federal Rule of Civil Procedure 56(f) provides that a court may deny a motion for

3

summary judgment in a case in which "a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed. R. Civ. P. 56(f). The Seventh Circuit has noted that a party's failure to file a Rule 56(f) affidavit warrants disregarding its asserted need for additional discovery. *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994). Intellect's counsel was reminded of this requirement at a hearing in which the court denied Intellect's motion to defer ruling on summary judgment until after claim construction occurred. (Doc. 145-2 at 3:11 through 4:2, 5:5-10; Doc. 135.) Without an affidavit that, consistent with Rule 56(f), sets out specific disputed factual issues on which Intellect needs specified additional discovery, the court declines to credit Intellect's contention that it needs discovery regarding the manner in which messages are initiated.

        2.        <u>Multiple Summary Judgment Motions</u>

Intellect also argues that defendants' motion is premature because Intellect amended its complaint to include the '532 patent, not at issue in the instant motion. (*See* note 2 *supra*.) According to Intellect, the instant motion wastes judicial resources because the court cannot resolve all of the claims by resolving the instant motion. (Doc. 137 at 6.) This argument lacks merit for two reasons. First, Intellect sought and was granted leave to file its amended complaint only after defendants filed their motion for summary judgment. (*Compare* Doc. 118 (motion for summary judgment filed Feb. 8, 2010) *with* Doc. 126 (motion for leave to file amended complaint, filed Feb. 10, 2010).) While the court casts no aspersion on Intellect's motivation in seeking amendment or the merits of its new allegations, a rule that summary judgment motions are premature by virtue of later-added allegations to an amended complaint would allow plaintiffs to

4

forestall rulings on timely and possibly meritorious motions for summary judgment. Intellect does not assert that it has amended its allegations regarding the three patents-in-suit at issue in the instant motion, but simply that its allegations regarding the '532 patent make summary judgment on the other three patents-in-suit premature.

Second, Intellect's argument of prematurity based on the amended complaint fails because, as Intellect concedes, the '532 patent contains many of the same terms at issue in the patents-in-suit; a ruling on the instant motion may limit the issues presented by the '532 patent, thereby promoting, rather than undermining, judicial economy.

    3.    <u>Claim Construction</u>

Intellect also contends that defendants' motion is premature because claim construction has not occurred in this case yet. (Doc. 137 at 2.) Intellect specifically contends that its interpretation of "initiating a message from a message originator" which appears, *inter alia*, in claim 1 of the '210 patent, quoted above, differs from defendants' interpretation. Intellect contends that messages are "initiat[ed]" by the software on wireless devices issued by defendants, while defendants contend that their subscribers, who are the users of the devices, initiate messages.[3]

A determination of infringement, or non-infringement, is a two-step analysis, in which the court first determines the scope and meaning of the patent claims asserted, and second compares the properly construed claims to the allegedly infringing device or process. *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1370 (Fed. Cir. 2003).

---

[3] Defendants assert that Intellect litigated the same claims against another defendant in a different court in this district without asking for claim construction of the "initiating" term identified above. *See Intellect Wireless, Inc. v. LG Elecs., Inc.*, No. 08 C 1350. Defendants' argument on this point is underdeveloped, as they provide no analysis of what similarities exist between the allegations in that case and this or what arguments were raised by defendants in that case. Nor do they cite any legal theory suggesting, let alone holding, that Intellect's asserted failure to ask for claim construction in that case bears upon the validity of its request for construction in this case.

5

Claim construction is a question of law for the court to decide. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). While the court construes the claims according to their ordinary and customary meanings, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc), terms may have more than one ordinary meaning, or the term's ordinary meaning may not resolve the parties' dispute, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). In cases in which the parties dispute the meaning of a term, claim construction is necessary to determine the term's meaning. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1351 (Fed. Cir. 2010) ("In sum, claim construction involves many technical, scientific, and timing issues that require full examination of the evidence and factual resolution of any disputes before setting the meaning of the disputed terms.").

The parties dispute the definition of the term "initiating a message." As explained within, neither a straightforward reading of the claims nor a review of the record now before the court conclusively establishes the meaning of the phrase "initiating a message," specifically, whether a message is initiated by the "message originator" or from the "message originator" but by software on devices issued by defendants. Accordingly, claim construction is necessary, and summary judgment is improper.

**B.     Whether a Single Actor Can Infringe the Patents-in-Suit**

Defendants maintain that, under any reasonable construction, the claims at issue cannot be performed by a single actor. As explained within, a patent is infringed only when each step in a claimed method is performed by a single actor. In this case, defendants contend that the transmission of a message in the method described by the claims requires the conduct of, at minimum, the "message originator" and the "message

6

center." Because the claims have not been performed by a single actor, defendants reason, they are entitled to summary judgment of non-infringement. The court analyzes the single-actor requirement, then applies that analysis to Intellect's claims in this case.

      1.      <u>The Single-Actor Requirement</u>

As the Court of Appeals for the Federal Circuit has reaffirmed repeatedly, "Direct infringement requires a party to perform or use each and every step of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S. Ct. 1040 (1997)); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008). This requirement is based on the statute defining infringement, which states that "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States . . . infringes the patent." 35 U.S.C. § 271(a). An infringer must make, use, offer to sell, or sell the entire claimed invention; consequently, "Direct infringement . . . is limited to those who practice each and every element of the claimed invention." *BMC Res.*, 498 F.3d at 1381.

Recent Federal Circuit cases cited by defendants teach that claims generally cannot be infringed by the conduct of multiple parties. In *BMC Resources*, the court addressed method claims "for processing debit transactions without a personal identification number." 498 F.3d at 1375. The claims at issue required: "accessing a remote payment network;" "the accessed remote payment network determining" whether sufficient funds for the debit transaction existed; and "charging the entered payment amount against the account . . . ." *Id.* at 1376. The court found that the claim required the conduct of multiple actors including the defendant, which processed the requested

7

debit transaction, and a financial institution, which, if it approved the transaction, charged the entered payment amount. *Id.* at 1376-77. Analyzing these claims, the court affirmed that no infringement had occurred in part because multiple parties' conduct was necessary to complete the conduct described in the claim. *Id.* at 1378.

In *Muniauction*, on which defendants also rely, the Federal Circuit again addressed a case in which "no single party performs every step of the asserted claims." 532 F.3d at 1328. The claims at issue in *Muniaction* concerned software by which a municipality could issue bonds; bidders for those bonds could enter bids, which the issuing municipality could view thanks to the defendant's auctioneer software. *Id.* at 1322-23. The court found that the claims before it required the conduct at least of a bidder and the auctioneer, and the parties agreed that each step of the claims could not be performed by one party. *Id.* at 1328-29. Without a single actor (or a single actor's control of other actors, as described in note 4 below), no infringement occurred. *Id.*; *see also Cross Med. Prods. v. Medtronic Sofamor Danek* (*Cross*), 424 F.3d 1293, 1310-11 (Fed. Cir. 2005) (analyzing a patent for orthopedic surgical implants that required that the implant be "operatively joined" to the patient's bone; holding that the patent was not infringed by the implant's manufacturer in part because the surgeon "operatively joined" the implant to the bone).[4]

---

[4] The single-actor requirement is subject to a single, so-called "mastermind" exception by which multiple parties under the "control or direction" of a single party "combine to perform every step of a claimed method." *Muniauction*, 532 F.3d at 1329. In such cases, the mastermind is liable as if it performed each of the actions directly. *Id.* In *BMC Resources* and *Muniauction*, the Federal Circuit found insufficient indicia of "control or direction" to impute the conduct of the several parties that performed the steps in the claim to one mastermind. *BMC Res.*, 498 F.3d at 1381-82; *Muniauction*, 532 F.3d at 1330; *see also Cross*, 424 F.3d at 1310-11.

In this case, defendants contend that the mastermind exception does not apply to the conduct alleged by Intellect. Defendants cite several cases holding that remote users of software are not controlled or directed by central software administrator. *See Muniauction*, 532 F.3d at 1380-81; *see also Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008); *see also*

2.   Limitations on the Single-Actor Requirement

Intellect argues that defendants violate each and every step in the claims at issue, thereby not running afoul of the single-actor requirement. As noted above, the parties' central dispute concerns the term "initiating a message from a message originator . . . ." According to Intellect, defendants' software, not defendants' subscribers, "initiat[es] a message." The software within each device is defendants' own, Intellect contends, such that defendants perform each step of the claimed method without reference to another party.

Although Intellect cites no authority in support of this argument, recent cases have distinguished *BMC Resources* and *Muniauction* in addressing claims that, while "contemplat[ing]" the conduct of several parties, explicitly address the conduct only of a single actor. *Level 3 Comms., LLC v. Limelight Networks*, 630 F. Supp. 2d 654, 661 (E.D. Va. 2008); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1330 (Fed. Cir. 2010).[5] Whether a claim requires "different parties to perform different acts within one claim," *BMC Res.*, 498 F.3d at 1381, or instead is "drawn to actions which can be

---

*McKesson Info. Solutions LLC v. Epic Sys. Corp.*, 1:06-CV-2965-JTC, 2009 WL 2915778, at *6 (N.D. Ga. Sept. 8, 2009); *but see Netscape Comms. Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 699, 727 (E.D. Va. 2010) (denying summary judgment due to factual questions regarding whether defendant software company directed or controlled software on users' computers); *Am. Patent Dev't Corp., LLC v. Movielink, LLC*, 637 F. Supp. 2d 224, 236-37 (D. Del. 2009) (same); *see also Nuance Comms. Inc. v. Tellme Networks Inc.*, Civ. No. 06-105-SLR, 2010 WL 1609883, at *9 (D. Del. Apr. 20, 2010) (finding that questions of fact existed concerning whether end users of telephone speech-recognition directory assistance services exercised "control or direction" over defendant's services). In response, Intellect raises no argument regarding the "control or direction" exception to the single-actor requirement, and points to no evidence suggesting that defendants exercised such "control or direction" over their customers.

5    *SiRF Technology* was decided on April 12, 2010, after the instant motion was fully briefed. *SiRF Tech.*, 601 F.3d 1319. While no party submitted the case as additional authority to be considered by the court, its application to this case is clear for the reasons described in the body of the opinion. *SiRF Technology* provides a basis for the court's explanation of its decision on the instant motion, but, in the court's view, did not announce a new rule of law that required additional briefing from the parties. Rather, *SiRF Technology* distinguished *Muniauction* and *BMC Resources* on the ground that, while the claims at issue in those two previous cases plainly required the conduct of multiple parties, the method claims before the court in *SiRF Technology* addressed the conduct of only one actor. *Id.* at 1329 & n.9. This distinction is consistent with the Federal Circuit's observation in *BMC Resources* that "[a] patentee can usually structure a claim to capture infringement by a single party." *BMC Res.*, 498 F. 3d at 1381.

performed and are performed by a single party," *SiRF Tech.*, 601 F.3d at 1329, depends on how the claim is structured. "A patentee can usually structure a claim to capture infringement by a single party." *BMC Res.*, 498 F. 3d at 1381.

In *SiRF Technology*, the Federal Circuit addressed claims concerning methods of "communicating" and "transmitting" data related to a global positioning system ("GPS") to a mobile GPS receiver. 601 F.3d at 1329-30. The court noted that the communicating and transmitting of such data could occur only if its customer forwarded the data to an end user and the end user downloaded the data. *Id.* at 1330. However, the claims at issue did not concern the "forwarding" and "downloading" performed by the customer and end user, respectively, but rather only "communicating" and "transmitting," both of which the infringer could and did perform. *Id.* Accordingly, the customer's and the end user's conduct, while related to the claim, was not described in the claim, and therefore did not violate the single-actor requirement. *Id.*

The *SiRF Technology* court also examined a second claim requiring "processing [the] satellite signals at the mobile GPS receiver." *Id.* The infringer argued that the end user needed to, *inter alia*, "activat[e]" the software at issue and "enabl[e]" a feature on the device before the satellite signals could be "process[ed]," *id.* at 1331, such that the infringer did not perform every step in the claim. The court rejected this argument, explaining, "There exists no method step in any of the disputed claims that requires 'enabling' or 'activating' the devices that perform these claim limitations. . . . Appellants, in essence, ask us to read such limitations into the claims. We decline to do so." *Id.*

Similarly, in *Level 3 Communications*, a district court addressed method claims concerning a content delivery network, which supported the "delivery of information,

10

such as video, music, games, and software, to computer users or computers on behalf of [the network's] subscribers." 630 F. Supp. 2d at 656. The claims at issue referenced, by way of a preamble, "clients" and "subscribers," but clients and subscribers "play[ed] no role in the steps of the claims' methods." *Id.* at 659, 660. Rather, the claims at issue were "drafted in such a way as to allow infringement to be claimed on the basis of a single party . . . ." *Id.* at 661. Because the claims before it were structured to capture the conduct of a single party, the *Level 3 Communications* court, like the *SiRF Technology* court, found "jurisprudence regarding infringement by multiple parties in *Muniauction* and *BMC* inapposite," *id.* at 661, and accordingly denied summary judgment.

  3.  <u>Intellect's Claims</u>

    a.  <u>The Claims as Written</u>

In this case, the claim quoted above requires, *inter alia*, "initiating a message from a message originator to a message recipient under the control of the message originator as to when the message is sent to a message center . . . . " (Defs.' Stmt. ¶ 15.) Intellect argues that, while the claim requires "initiating a message," the claim does not require that the "message originator" perform the "initiating." Rather, according to Intellect, a defendant that maintains the "message center" and the software on each subscriber's wireless device to "initiat[e]" a message can perform each of the steps in the method claim as a single actor.

The court agrees. Based on the available evidence, the claim does not clearly require the conduct of the message originator. If, for example, the claim was limited by a term such as, "initiating, by a message originator, a message," then the conduct of the message originator would be a limitation on the claim. Or, if the claim included not only

the same "initiating" language at issue here but also a limitation of "composing, by a message originator, a message," then the patents-in-suit might address the conduct of multiple parties.[6] But the "initiating a message" limitation on the claims at issue in this case requires a message *from*, and not conduct *by*, the message originator. The "initiating" conduct does not need to be by the message originator. To read the claim otherwise would be to read conduct into the claims, which, the Federal Circuit has instructed, is improper. *SiRF*, 601 F.3d at 1331.

Defendants argue against this reading and point to a recent district court decision granting summary judgment on what defendants assert to be "substantively identical" arguments to those offered by Intellect. *See PA Advisors, LLC v. Google, Inc.*, No. 2:07-cv-480, 2010 WL 986618 (E.D. Tex. Mar. 11, 2010). In *PA Advisors*, the district court addressed the applicability of *BMC Resources* and *Muniauction* to a claim pertaining to search engine technology employed by Google and Yahoo. *Id.* at *8. The claim at issue included a step requiring "providing, by the user to the local computer system, search request data . . . ." *Id.* The other steps in the claim at issue were "performed by the system [*i.e.*, Google or Yahoo]-not the user." *Id.* The court found that: the claim "requires the user to provide the system query data;" there was no evidence that the defendants directed or controlled the "user;" and "the user continues to choose the course of the search without the 'control or direction' of the accused search engines." *Id.* Because independent conduct by both the user and the system was necessary to complete each step in the claim at issue, the patent was not infringed.

---

[6] In debating the meaning of the phrase "initiating a message," the parties have not discussed the meaning of the term "message originator." However, it is not clear that "message originator" refers to the user of a wireless device such as defendants' subscribers, rather than the software on such a wireless device, as explained within.

Contrary to defendants' argument, the claims at issue in *PA Advisors* differ from those at issue here. As discussed above, the claims at issue here do not require conduct *by* the message originator, but rather the initiation of a message *from* the message originator. The claim at issue in *PA Advisors* required conduct by a "user," specifically, "providing . . . search request data." *Id.* In other words, the plaintiff in *PA Advisors*, by arguing that the defendants could perform each and every step in the claim, sought to omit a term from the reading of the claim. *Id.* In this case, Intellect does not seek to omit "initiating" from the claims at issue, but rather argues that the "initiating" is not performed by the message originator. As explained above, Intellect's interpretation is plausible, rendering *PA Advisors* distinct from this case.

      b.      <u>The Claims as Applied to This Case</u>

Defendants contend that regardless of the reading of the claims at issue, the undisputed evidence in this case reveals that the allegedly infringing conduct is performed by multiple actors. In response, Intellect produces evidence to support its theory that each defendant performs every step in the claims at issue.[7] With respect to

---

[7] In a footnote in their reply brief, defendants maintain that Intellect has conceded in its discovery responses that the message originator initiates a message in the claims at issue. (Doc. 144 at 4 n.2.) As Intellect points out, though, it supplemented its discovery responses to make clear that it contends that defendants' devices "initiat[e]" messages, so that each defendant performs every step in the method claim. (*See, e.g.*, Pl.'s Ex. A at 30.)

Courts have long recognized that parties may amend and supplement their answers to interrogatories, *see, e.g.*, *McElroy v. United Air Lines, Inc.*, 21 F.R.D. 100, 102 (W.D. Mo. 1957), and that "an answer to an interrogatory does not conclusively bind the answering party in all instances," *Marcoin, Inc. v. Edwin K. Williams & Co.*, 605 F.2d 1325, 1328 (4th Cir. 1979). This general trend is particularly true in patent cases, in which parties frequently propound and respond to interrogatories regarding each other's contentions, like those at issue here. While previously, courts generally disallowed such "contention" interrogatories, *see* Charles A. Wright et al., Federal Practice and Procedure, § 2167, at 21 (3d ed. 1998), Rule 33(a)(2) now explicitly permits such interrogatories in all cases. Still, courts, particularly in patent suits, generally still do not treat responses to contention interrogatories as binding. *See, e.g.*, *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1414 (N.D. Ill. 1996) (Gettleman, J.) ("Answers to interrogatories, however, do not bind parties as do allegations or admissions in a pleading."); *Third Wave Techs., Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991, 1000 (W.D. Wis. 2005). The Local Patent Rules of the Northern District of Illinois further exemplify the non-binding nature of the contentions of parties by providing for the disclosure both of "initial infringement contentions, L.P.R. 2.2, and "final infringement

13

U.S. Cellular, Intellect points to internal U.S. Cellular documents that provide that software on the wireless devices "sends . . . messages" to the service center. (Pl.'s Ex. C.) With respect to T-Mobile, Intellect produces internal documents suggesting that software on wireless devices sends and receives messages to the service center (Pl.'s Ex. D), "without user intervention" (Pl.'s Ex. B at 40).

The evidence creates a genuine issue of material fact regarding whether each defendant's software "initiat[es] a message from the message originator." The court also is unconvinced that "message originator" and "message recipient" as applied to wireless devices sold by T-Mobile and U.S. Cellular to their subscribers refer to users of devices, rather than to software contained on the devices themselves; therefore, even if the claims required conduct by a "message originator" (for example, because the sending of the message is "under the control" of the message originator), they would not necessarily violate the single-actor requirement. Documents provided with respect to both defendants describe the sending and receiving of messages as if no subscriber was necessary.

Despite these factual issues, defendants contend that they are nevertheless entitled to summary judgment for two reasons. First, defendants contend that, for a claim-infringing message to be sent, a subscriber must first perform the predicate acts of composing a message and requesting to send that message. For this proposition, defendants rely on *Global Patent Holdings*, 586 F. Supp. 2d 1331, also cited above.

---

contentions," L.P.R. 3.2. This is not to say that Intellect can forever avoid summary judgment by amending its responses to defendants' interrogatories, but rather that Intellect's initial interrogatory responses are not binding at this stage.

    Given the non-binding nature of initial interrogatory responses, Intellect's supplemental responses, the Local Patent Rules' provision for evolving contentions over the span of the suit, the early timing of the instant motion, and a reading of the subject method claims, which suggests that a "message originator" may not "initiat[e]" a message, the court declines to grant defendants' motion on the basis of Intellect's prior interrogatory response.

14

*Global Patent Holdings* addressed a patent that the parties agreed "require[d] two individuals or entities to complete all of the method's steps . . .–a remote computer user, and the website server." *Id.* at 1335. In this case, unlike in *Global Patent Holdings*, a genuine dispute concerns whether the conduct of multiple parties, or only that of a single party, is necessary to complete the subject method claims' steps; a reading of the claims and a review of the present record does not resolve that dispute.

This case is more analogous to *SiRF Technology*, the recent Federal Circuit case discussed above. In *SiRF Technology*, as discussed above, the court rejected the infringers' efforts to read additional terms into the claim, even if those terms were necessary predicates to the conduct described in the claim. 601 F.3d at 1330-31. The court offered the following analogy:

> [I]f a claim for a method of making a telephone call included the limitation: "placing a telephone call to a telephone at a second location," the fact that the call must first be routed through a switched telephone network, and then eventually to the eventual recipient, would not prevent this claim limitation from being satisfied.

*Id.* at 1330. That analogy is similarly apt here. A claim that requires "initiating" a message may require a predicate act by a subscriber. But, unless that predicate act is described in the claim, the claim does not necessarily require the conduct of multiple actors. Here, a factual question exists as to whether the defendants alone perform the steps in the claims at issue, or whether conduct by the subscribers is also necessary.

Finally, defendants urge that because their subscribers possess and own the wireless devices in question, the subscribers and defendants must both act to satisfy the claim limitations. In other words, the subscribers' ownership of the devices renders the operation of the software attributable to the subscribers, rather than defendants. However, defendants cite no relevant legal authority for this proposition. Moreover, the

15

*SiRF Technology* court, while not explicitly addressing this question, found the patents before it infringed where chips "designed and built by" the infringers were "incorporated into end-user GPS devices." *Id.* at 1323, 1331. As the court found, "Once the GPS receiver is enabled and ready to process the data, only [the infringers'] actions are involved in" satisfying the claims limitations. By implication, the infringers' conduct included actions taken by the software in the GPS devices.

The court rejects defendants' contention that because their subscribers own the wireless devices at issue, the conduct of multiple parties is required. The performance of certain steps of the method claims by software on wireless devices that defendants provide to their subscribers does not prevent the claims from being satisfied by the defendants' conduct.

## IV. CONCLUSION

In sum, the claims at issue in this case present a number of material factual issues that the court cannot resolve at this stage. Claim construction is therefore appropriate, and defendants' motion for summary judgment is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 13, 2010